## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**DAVID P. EVANS,** *et al.,*

     **Plaintiffs,**

     **v.**

**J. BRIAN ATWOOD,** *et al.*

     **Defendants.**

---

**Civil Action No. 96-2746 (RMU/JMF)**

**FILED**

MAR 1 1 20...

NANCY MAYER WHIT...
U.S. DISTRICT...

### REPORT AND RECOMMENDATION

The sole issue before me is whether or not I have jurisdiction to rule on class member

Richard J. Delaney's ("Delaney") allegations that United States Agency for International

Development ("AID") lawyer Carl Sosebee ("Sosebee") breached the terms of the settlement

agreement approved by this court. As I stated in my Order of December 7, 2000:

> The only possible jurisdictional basis to consider Delaney's
> complaints is if they were to constitute a breach of the settlement
> agreement which, according to its terms, ripened into a court order
> upon Judge Urbina's final approval of it.

Order, December 7, 2000, at 4.

I therefore ordered Delaney to identify which of Sosebee's acts Delaney believed

constituted a violation or breach of the settlement agreement. To understand them, one has to

understand the history of the settlement discussions and the resulting derivation of the provisions

that Delaney claims Sosebee violated.

### The Settlement Discussion and the Resulting Provisions

The settlement discussions over which I presided were protracted, but handled with

remarkable ability, grace, and professionalism by the attorneys. It has been said that a good

settlement displeases both sides equally and several of the provisions of this settlement

agreement are perfect examples of the wisdom of that sentiment. To understand the meaning of

the agreement's provisions, one has to understand what each party was attempting to accomplish

and how each provision represents a significant compromise between the parties.

The first problem arose because some members of the class were pursuing actions based

on the reduction in force that lead to lawsuits in other fora, such as the Merit Systems Protection

Board ("MSPB"). AID feared that if those class members received a certain amount in

settlement of this case and successfully prosecuted actions in other fora, they might receive two

recoveries for a single, indivisible wrong. AID initially insisted that there had to be a mandatory

offset of the recovery in this case against any other recovery but, after intensive negotiations on

many issues, agreed to only claim as an offset in any other fora an individual plaintiff's recovery

in this case. Hence, the settlement agreement provides:

> This Settlement Agreement does not include, relate to, or resolve
> claims brought by the named plaintiffs or class members pending
> as of December 23, 1999, in other forums such as the Foreign
> Service Grievance Board, Merit System Protection Board, or
> claims related to Federal workers compensation. However, the fact
> of settlement or the Settlement Agreement is not to be used in
> other proceedings, as set forth in paragraph VI.C, except that it
> does not constitute a waiver of any claim or defense, for example,
> the Agency shall be entitled to claim an offset against back pay and
> any other monetary recovery in such other proceedings for the full
> extent of the payment received by the class member under Section
> IV.A.

Evans Settlement, Section I.A.

This provision is a classic "middle ground" between two extreme positions – mandatory

offsets or none at all.  Basically, it shifted to other fora the battle over what consequences the

recovery in this case would have for recovery by class members in those proceedings.

Resolution of a second problem required the parties to focus on what position, if any,

AID would take as to the allocation of the total settlement figure between the class and counsel.

Whether a "slip and fall" or a complicated class action, negotiations concerning the allocation of

a defendant's settlement offer between plaintiff and her counsel are tricky business.  The

defendant certainly does not want to place opposing counsel in the hopeless position of

advancing counsel's interest against his client's.  Understandably, counsel for the defendant

simply offers a lump sum and leaves allocation to the private discussions between plaintiff and

counsel.[1]  But a settlement in a class action is different because a judge will ultimately determine

the reasonableness of counsel's fee.  Since that is so, and any question of conflict of interest has

evaporated, there is absolutely no ethical proscription against the defendant speaking in court as

to the reasonableness of the fee sought.  By arithmetical necessity, this also speaks to the

allocation between counsel and client of the settlement figure.  Thus, AID could have spoken to

the reasonableness of the fee and insisted that the agreement not address the allocation of the

settlement figure between counsel and client.  It could have forced Judge Urbina to determine

that allocation.  AID, however, chose not to do that and instead agreed to remain silent as to that

allocation:

> The named plaintiffs have proposed a distribution of the $5.5
> million lump-sum payment settlement proceeds as follows, subject
> to approval by the Court: 37 named plaintiffs (listed on Attachment

---

[1] A variation is the Title VII case where the United States will offer a certain amount and
pay fees based on counsel's hours and the <u>Laffey</u> rates.  This also commendably avoids pitting
counsel against her counsel.

> A), $63,000 each; 53 non-plaintiff class members who were RIF's
> (listed on Attachment B), $22,000 each; 6 non-plaintiff class
> members who were not RIF's (listed on Attachment C), $0. The
> balance of Settlement proceeds, $2,003,000, is proposed to be paid
> to Plaintiffs' Counsel for fees and costs upon application to and
> approval of the court. Any interest accruing on the lump sum
> settlement amount will be distributed in a pro rata basis in
> proportion to each payee's share of the settlement proceeds.
> Defendants agree not to take a position on the proposed allocations
> in this paragraph.

Evans Settlement, Section IV.A.3.

## Delaney's Opposition to the Settlement Agreement

Delaney is a member of the plaintiff class who pursued an action based on the RIF before

the Merit Systems Protection Board ("MSPB").

The settlement agreement is dated January 28, 2000. On February 1, 2000, AID filed a

pleading in the MSPB that mistakenly stated:

> The settlement contains a provision for offset of this amount in any
> collateral proceedings related to the RIF action. In this regard, it is
> the Agency's intention to offset the sum recovered by appellant
> [Delaney] in the class action settlement form the final backpay
> figure in this proceeding.

Plaintiffs' Comments on April 28, 2000 Letter From Class Member Richard Delaney
("Comments") at 6-7.

Obviously, the settlement agreement does not give AID any right to offset unilaterally

what Delaney received from this lawsuit. AID had the right to *claim* an offset, not to *take* one.

Delaney decided to oppose the proposed settlement, insisting that the offset provision be

deleted in its entirety, lest he be singled out for unfair treatment. Plaintiff's counsel opposed this

application. Counsel pointed out that the language to which Delaney objected was inserted to

help class members like Delaney protect their right to prosecute other actions in pending cases,

such as the case Delaney had pending in the MSPB. Id. at 9.  Counsel then pointed out that Delaney retained the right to make any claim he saw fit in the MSPB proceeding without any offset from the settlement in this case and AID retained the right to claim any offset.  The point was that AID could not automatically deduct the payment in this case from any payment in any other case; AID had preserved only the right to claim the offset. Id. at 11.

In his Memorandum Opinion of October 3, 2000, Judge Urbina resolved Delaney's objections to the proposed settlement.  Delaney first objected that the paragraph of the agreement, quoted above, which provides that "[d]efendants agree not to take a position on the proposed allocations [of payments among class members] in this paragraph" itself barred the offset provision.  Judge Urbina promptly rejected that contention:

> Agreeing to the offset provision does not make the defendants guilty of objecting to the proposed allocation. This is because the offset provision deals with AID's right to claim a credit in other proceedings, for a person's recovery in this action. The offset provision will come into play, if at all, only after the instant settlement proceeds have been paid to the class members. Thus, the offset provision has no effect on how the class's recovery is allocated among the class members.

Memorandum Opinion at 19.

In addition, as I have explained, the allocation provision dealt with whether or not AID would comment on the reasonableness of counsel's fee and had nothing to do with the offset provision.  To assert, as Delaney must, that the skilled lawyers who drafted the agreement either purposefully or negligently created self-contradictory provisions is fatuous.

As to the offset provision, Judge Urbina went to great length to provide an explanation:

> [I]n other words, both plaintiffs and defendants had the understanding and expectation, when they executed the settlement

5

> agreement, that AID may not take the offset in an "other
> proceeding" until and unless the judicial officer presiding over that
> proceeding rules that AID may do so within the confines of the
> Back Pay Act or other applicable legal authority.

Id. at 20.

Having "adopted the construction of the offset provision which is favorable to Mr. Delaney and unfavorable to AID, eliminating his concern as to the provision's possible prejudicial effect in his MSPB proceeding," Judge Urbina approved the settlement. Id. at 20.

Judge Urbina expressed his concern that statements by Sosebee, who represented AID in the proceeding Delaney brought in the MSPB, were inaccurate and questioned whether they were a basis for referral of Sosebee to Bar Counsel. He referred the matter to me for further action.

## Ruling on Jurisdiction

The tone and content of Delaney's filings before Judge Urbina suggest to me that he had somehow seized upon the mistaken notion that this court had a kind of roving commission to review Sosebee's actions before another forum. I was obliged to remind him that this was a court of limited jurisdiction and the only jurisdiction it had was to consider claims of violation of the settlement agreement. I therefore ordered him to identify those acts of Sosebee's that constituted violations of the agreement. Order, December 7, 2000, at 4.

## Chronological Chart

In order to better understand Delaney's argument the following chart of significant events is provided:

| Date | Event | Source of Information |
|------|-------|-----------------------|
|      |       |                       |

| 12/29/99 | Settlement agreement reached in principle. | Affidavit of Raymond Fay ¶2 and Exhibit 3. |
|---|---|---|
| 01/02/00-01/28/00 | Parties, having agreed in principle, negotiate final terms of agreement. During these negotiations, AID proposes but plaintiffs reject suggestion that either the agreement provide that Delaney be excluded from settlement payment or that the settlement language be changed to provide for automatic of recovery in this case from any award to Delaney in MSPB. | Id. ¶ 3. |
| 1/29/00 | Settlement Agreement Executed. | Exhibit A to Response to Richard Delaney's January 26, 2000. |
| 2/1/00 | AID, by and through Sosebee, files a pleading with MSPB stating incorrectly that the settlement agreement provides for offset or recovery against any recovery by Delaney in MSPB. | Affidavit of Raymond Fay ¶ 2. |
| 2/3/00 | Fay letter to AUSA Contreras, claiming that 2/1/00 pleading is in violation of agreement. | Affidavit of Raymond Fay ¶ 2. |
| 2/16/00 | Letter by Sosebee to ALJ William Jenkins transmitting 1/29/00 settlement agreement and notifying judge of intention to claim offset pursuant to Section IV.A.3 of settlement agreement. | Attachment to Affidavit of John K. Scales. |
| 3/1/00 | Letter by Scales, AID counsel, to Fay indicating that AID intended to claim offsets, and that MSPB would determine claim for offsets. Scales describes Fay's concern that AID would take unilateral action on any offset AID claimed it was due from Delaney. | Attachment to Affidavit of John K. Scales. |

| 3/1-10/00 | Fay advises Delaney that in light of Scales' letter of March 1, 2000, AID would not unilaterally help itself to offset in MSPB case. | Affidavit of Raymond Fay ¶ 5. |
| --- | --- | --- |
| 3/10/00 | AID, by pleading, sets forth its position as to offset due from Delaney's recovery in this case. | Affidavit of Raymond Fay, Exhibit 8. |
| 4/6/00 | ALJ in MSPB case determines that question of offset is not ripe. | Affidavit of Raymond Fay, Exhibit 9. |
| 10/03/00 | Judge Urbina approves settlement. | Court jacket. |

## Delaney's Offset Claim

Delaney's first claim deals with Sosebee's activities in the period from December 29, 1999, when the parties signed an agreement in principle in my presence, to January 28, 2000, when the parties, having hammered out their differences, signed the final settlement agreement. Delaney's complaint is that during this period of time Sosebee tried to have Delaney excluded from the class or, in the alternative, have his aliquot portion of the recovery automatically deducted from any recover Delaney secured in the MSPB. But Delaney knows as well as I do that there was not a word in the December 29, 1999 agreement that dealt with the question of offsets in MSPB proceedings brought by class members. Sosebee was free to advance for the parties' consideration whatever proposal he sought. It is frivolous for Delaney to claim that Sosebee's proposals violated an agreement that was not in existence. Nor does Delaney's invocation of an "agreement in principle" help me. Courts do not enforce agreements in principle, whatever that means. They enforce agreements when the parties, having negotiated, reach a mutual understanding. Until then, it is impossible for any unilaterally-advanced proposal to violate the agreement they ultimately reach.

8

### Delaney's Claim Concerning Sosebee's Filings in the MSPB

Delaney's second claim deals with Sosebee's behavior in the period from February 1, 2000, to March 10, 2002, when Sosebee filed two pleadings in the MSPB which spoke to the significance of the settlement agreement.

Before reaching the validity of that complaint, I must note that in one aspect Delaney's silence is deafening. Although he has filed a blizzard of papers in this case, Delaney never tells me the final resolution of the MSPB proceeding. I had to learn from an independent source that AID ultimately withdrew any claim that the MSPB should deduct from Delaney's recover in the MSPB the $22,000 he recovered in this case. Having learned that, it is astonishing to see what a tempest in a teapot Delaney has created. Since AID never pressed an offsets claim, Sosebee's statements to the MSPB about offsets did not and could not have cost Delaney a penny. As is obvious, his complaints about Sosebee's conduct are not justiciable; he cannot possibly establish that he suffered any injury in fact. Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 299 (1979); Navegar, Inc. v. United States, 103 F.3d 994, 997-998 (D.C. Cir. 1997). To the contrary, he seeks exactly what this court cannot give him – an advisory opinion as to the propriety of the conduct of a lawyer in some other forum even though that conduct could not possibly have harmed him.

Even if this court could consider Delaney's complaints, they are meritless. It is first clear that the pleading Sosebee filed on February 1, 2000 mistakenly represented the tenor of the offset provision of the agreement. It is equally clear that 15 days later, before the administrative law judge ("ALJ") had taken any action whatsoever, Sosebee corrected his mistake by describing the offset provision accurately and transmitted the agreement itself to the ALJ. In the 15 days

between the two pleadings, how was Delaney harmed?[2]  The most fundamental principle in

contract law is that upon a breach, the victim of the breach is entitled to be put in the position he

would have been had the contract been enforced. Arthur L. Corbin, Corbin on Contracts, § 992 at

5 (1964).  But if after the claimed breach, the "victim" is in the same position he was before the

"breach," why should the court come to his aid?  While those who are fond of debating how

many angels can dance on the head of a pin would insist that a cured breach was still, at one

point in time, a breach, the courts would answer: *de minimis non curat lex*. "The law does not

concern itself with trifles."  It is absurd to waste time on what Sosebee said on February 1, 2000

about the agreement when the MSPB had its own copy of the agreement 15 days later.

It is clear, however, that Sosebee's next pleading contradicted the one filed when he

transmitted the agreement to the ALJ.  While in the first pleading, he correctly explained that the

agreement permitted AID to seek an offset, his second pleading indicated that AID could take the

offset itself.  Sosebee wrote:

> Pursuant to this language [i.e., the offset provision in the settlement
> agreement] the Agency plans to offset from any final backpay
> award in these proceedings monies appellant [Delaney] may
> receive under the Evans proceedings. The actual implementation of
> the offset will depend on the timing of the two separate
> proceedings (Evans and this proceeding) and, naturally, whether
> the Court approves the settlement agreement and appellant actually
> receives money under the Evans proceeding.
>
> This is the agency's view, claim and position on offset. If
> the MSPB believes, for any reason, that the Agency's stated claim
> and intention to offset is wrong for legal, equitable, factual or other
> grounds, the Agency will respectfully entertain the Board's views

---

[2] Indeed, plaintiff's counsel assured Delaney that after Scales' letter of March 1, 2000,
Delaney need not have any concern that AID would take the unilateral action Sosebee mistakenly
predicted.

10

and respond accordingly.

Comments, Exhibit 2 at 4.

As Judge Urbina pointed out at the fairness hearing, there is a palpable and evident difference between claiming an offset, which the agreement permits, and saying that an agency will offset what Delaney recovered in this case. The agreement speaks of the agency making a claim; Sosebee's pleading bespeaks an intention to take the offset and not wait for a ruling on the legitimacy of that claim. To make it sound even more high-handed, the last paragraph could be read to mean that AID might deem a ruling by MSPB on the offset advisory only.

But even if one construes this letter as strongly against Sosebee as Delaney does, we are back where we started from: no harm, no foul. By the time Sosebee wrote his second pleading, the ALJ had the agreement and Sosebee's first pleading, which accurately described the offset provision. It is inconceivable that the ALJ would have premised any decision upon the offset question on Sosebee's pleading rather than the agreement itself. More to the point, on April 6, 2000, the ALJ issued his initial decision, in which he postponed any resolution of the offset question until the approval of the settlement in this case. Before the ALJ could return to the issue, AID withdrew its offset claim. Thus, if Sosebee's second pleading was a breach, it was a technical one that could not possibly have harmed Delaney. Again, Delaney's claim of breach is not justiciable because it raises, at best, an academic and meaningless question.

Finally, in his second pleading to the MSPB, Sosebee introduced the paragraph I just quoted with his version of the negotiations that led up to the offset provision. Comments, Exhibit 2 at 4. Delaney protests that Sosebee's statements about the negotiations violate: (1) section VI. C, which states that neither the settlement agreement nor the negotiations leading up to it could

11

be  construed as evidence of liability or an admission of wrongdoing by AID, and (2) section VI. F, standard "integration" clauses indicating that the agreement constitutes the full and complete agreement between the parties, that no other statements are binding upon them, and that the agreement supersedes all prior agreements.  In this case, that would mean that the earlier settlement in principle, executed on December 29, 1999, was superseded.

Delaney's reliance on these provisions to support his assertion that Sosebee's representation regarding the negotiations is as frivolous as his other contentions.  These provisions, standard form in every well-drafted settlement agreement, protect the defendant from liability premised solely on his willingness to settle the case and, consistent with common law principles, provide that parol evidence will not be permitted to modify the terms of the integrated agreement, an agreement that supersedes all previous agreements.  These provisions obviously have nothing to do with the confidentiality of the negotiations.

That is not to say that I have been delighted to read how settlement participants in those negotiations discussed what occurred during negotiation without asking to be relieved of the obligation I imposed upon them to keep the settlement discussions confidential.  The wise rule I just referred to that bars parol evidence about an integrated agreement also encourages settlements.  If the parties know that once they arrive at an integrated agreement their negotiations will remain forever sealed, they are that much more willing to be candid and thereby increase the chances of settlement.  If, on the other hand, at the first sign of trouble, counsel and the parties believe that they can, without judicial approval and with impunity, disclose the negotiations that lead up to an integrated agreement, all Hell promptly breaks loose; they immediately begin to squabble about what happened during the negotiation sessions.  In this

12

case, that squabbling approached its nadir when Sosebee and Delaney quarreled about what happened at negotiating sessions neither of them attended. Sosebee started that fight and he should have sought my permission before he violated the confidentiality of the settlement discussions. Had he sought my permission, I would have denied it, finding that the offset provision in the agreement was clear and that there was no necessity or warrant in law to disclose the negotiations that resulted in the offset provision. Had I done so, I could have saved everybody a lot of time and trouble.

### Conclusions

I therefore conclude that Delaney has failed to establish that Sosebee's conduct violated the settlement agreement. It follows that this Court lacks jurisdiction over the subject matter of his complaints.

I also do not recommend that Judge Urbina refer Sosebee to Bar Counsel for disciplinary action. First, as to the pleading filed on February 1, 2000, Sosebee will not be the first lawyer nor the last who was foolish enough to describe the contents of a document he had not read. Second, it is difficult to understand how anyone familiar with the offset provision could have written the second pleading. But unlike Delaney, who sees Sosebee as Satan himself, I cannot find any reason to attribute to Sosebee some ulterior, improper or nefarious motive. It must be remembered that the ALJ had the actual settlement agreement well before Sosebee filed the second pleading. Therefore, Sosebee could not mislead the ALJ, who had the ability to read the provision for himself and see that Sosebee was mistaken insofar as he asserted that the provision gave AID a unilateral right to take the offset. Finally, as I have taken pains to point out, since AID ultimately withdrew its claim for offsets, Delaney was never harmed by what Sosebee said.

13

At worst, Sosebee was foolish in what he did.  But as someone once pointed out, if stupidity was a crime, we would all be in the dock.

Furthermore, all of Sosebee's actions took place in another forum.  That forum has the right to discipline Sosebee or to recommend that someone else discipline him.  Simple comity suggests that the MSPB first determine whether the behavior by an attorney in a matter before it warrants censure or discipline.  There is nothing about this case that warrants this court taking the unusual step of disciplining a lawyer for what he did before some other court or agency.

Finally, and perhaps most significantly, it is time for this case to end.  In my naivete, I thought that when the parties signed the agreement in principle on December 29, 1999, this case was coming to an end.  Delaney thinks, however, that is has just begun.  Without seeking my leave or Judge Urbina's, he has filed a mountain of pleadings in which he complains about every aspect of his treatment by AID and the manner in which the agency and its lawyers have conducted themselves in the MSPB proceeding.  Ignoring my lecturing him that this is a court of limited jurisdiction, he seems to think that he is entitled to two lawsuits, one in the MSPB and this one, in which he demands that this court review the behavior of AID officials and lawyers in litigation with him in the MSPB.  It would be hard to imagine a course of action that mocks more derisively the limits on this court's jurisdiction. Delaney should certainly not be encouraged to continue this course of action.  The settlement of this case was supposed to bring repose to a difficult and complicated situation and to divert preciously needed judicial resources to other cases.  Thanks to Delaney's disgruntlement, more and more meaningless litigation is generated with no end in sight.  It is beyond time to bring that process to an end.  I recommend that the court take no action as to Sosebee and bring about the repose the settlement was supposed to

14

create.

I also recommend that <u>Defendant Atwood's Motion to Strike Richard Delaney's Reply Memorandum to Carl Sosebee's Opposition to Mr. Delaney's Opposition to Mr. Delaney's 1/26/01 Submission</u> [#215] and that <u>Defendants' Motion to "Dismiss" Mr. Delaney's Allegations of Retaliation</u> [#224] be denied as moot in light of this opinion.

Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: 03/11/02

15